John Houston Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel: (415) 561-9601
Fax: (415) 561-9609
john@scottlawfirm.net

Izaak D. Schwaiger, SBN 267888
**SCHWAIGER LAW FIRM**
130 Petaluma Avenue, Suite 1A
Sebastopol, CA 95472
Tel: (707) 595-4414
Fax: (707) 581-1983
izaak@izaakschwaiger.com

Attorneys for Plaintiff, ANDY FORD

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ANDY FORD

Plaintiff,

v.

CITY OF SANTA ROSA, CITY OF PETALUMA, JOHN WHITTEN, JOHN SILVA, JUSTIN FARRINGTON, THOMAS WALSH, DAVID LAMB, BRENDA HARRINGTON, STEVEN PEHLKE, MATTHEW ROONEY, DAVID LINSCOMB, SUMMER BLACK, ROBERT MOORE, DAVID MARCONI, RONALD NELSON and DOES 1-25, inclusive.

Defendants.

Case No:

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1. ADA/RA - 42 U.S.C. § 1213(1)(B); 29 U.S.C. § 794(b) – Wrongful Arrest
2. 42 U.S.C. § 1983 – Fourth Amendment Wrongful/False Arrest
3. 42 U.S.C. § 1983 – Fourth Amendment Malicious Prosecution

***JURY TRIAL DEMANDED***

PLAINTIFF ANDY FORD complains of Defendants and alleges as follows:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to federal laws 42 U.S.C. §§ 1213(1)(B), 1983, and 1988; and, 29 U.S.C. § 794(b). It is also brought for federal-question issues under the Fourth Amendment, the Americans With Disabilities Act, and the Rehabilitation Act. Jurisdiction rests upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

2. The conduct alleged herein occurred in Sonoma County, State of California. Venue of this action lies in the United States District Court for the Northern District of California.

**PARTIES**

3. Plaintiff Andy Ford resides in Santa Rosa, California.

4. Defendants City of Santa Rosa and City of Petaluma are public entities situated in the County of Sonoma, State of California and organized under the laws of the State of California.

5. Defendants John Whitten, Justin Farrington, Thomas Walsh, David Lamb, Brenda Harrington, Steven Pehlke, Matthew Rooney, David Linscomb, Summer Black, Robert Moore, David Marconi, and Ronald Nelson were police officers employed by the City of Santa Rosa. They acted in the course and scope of their employment, and under color of state law, at all times mentioned herein.

6. Defendant John Silva was a police officer employed by the City of Petaluma. He acted in the course and scope of their employment, and under color of state law, at all times mentioned herein.

7. Plaintiff also does not presently know the true names and capacities of defendants DOES 1 through 25, inclusive, and therefore sues them by these fictitious names. Plaintiffs are informed and believe that DOES 1 through 25, and each of them, were responsible in some manner for the acts or omissions alleged herein. Plaintiff will seek leave to amend this Complaint to add their true names and capacities when they have been ascertained.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

8. In doing the acts and/or omissions alleged herein, defendants and each of them acted under color of authority and/or under color of state law, and, in concert with each other.

## STATEMENT OF FACTS

9. Andy Ford was nineteen years old when he deployed to Afghanistan as a U.S. Army infantryman in 2010. His unit was assigned to Kunar Province, which was then described as the most dangerous terrain for U.S. forces anywhere in the world. American soldiers had dubbed it Afghanistan's "Heart of Darkness" where insurgents launched an average of three attacks per day against allied forces in the rugged mountain terrain.

10. Shortly after his arrival in Kunar, Andy was attached to Combat Outpost Monti where his unit was assigned to patrol the dangerous mountain roads outside of Asmar Village, a known sanctuary for al-Qaeda and allied terror groups. On one such patrol just before Thanksgiving, Andy's unit was ambushed while on a narrow mountain road above the village. Enemy fighters had buried a bomb in the roadway, and detonated it before Andy's platoon arrived, taking out the roadway in a dangerous chokepoint. The lead vehicle rounded a turn in the road and was forced to a halt as it came upon the site of the explosion, thus immobilizing the remainder of the platoon and leaving it exposed on the edge of a cliff unable to turn around.

11. Several soldiers dismounted from the vehicles and proceeded on foot to the overlook above the road to conduct a reconnaissance for a possible ambush, where they encountered two al-Qaeda fighters with machine guns. The foot patrol engaged the enemy soldiers quickly and eliminated them.

12. Andy dismounted from his vehicle and readied a radio to report the contact to headquarters, but before he could make contact, his unit came under massive machine gun and rocket attack from the cliffs above and across the valley. Holding the radio, Andy was the first target. A rocket propelled grenade impacted directly in front of him. The blast hurled the young soldier into the air and smashed his body into a boulder. Andy was severely burned and his leg

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

injured from the shrapnel from the exploding warhead. But his most serious injury, the damage to his brain, remained unknown for some time.

13. Andy picked himself up and began to return fire. His platoon engaged the enemy with heavy weapons as Andy applied a tourniquet to his leg, and began to move back down the cliff to the vehicles under the cover of his unit's fire. The patrol broke contact with the enemy and retreated back to the outpost where medics were unable to remove the shrapnel from his leg. Two days later, Andy's Battalion Commander arrived at the outpost to serve the injured men Thanksgiving dinner. Andy was awarded the Purple Heart, and despite his injuries returned to his unit the very next day. He completed his tour of duty and returned home to Santa Rosa in 2012. The shrapnel remains in Andy's leg to this day.

14. In February of 2013, Andy began suffering uncontrollable seizures and was diagnosed with refractory epilepsy as a result of the traumatic brain injury he sustained in the war. At first the seizures occurred months apart, but as time passed and Andy did his best to live a normal life, his seizures increased in frequency and severity until the point where he would sometimes experience more than one seizure in a day. His condition is untreatable.

15. Following a grand mal seizure, those who suffer from epilepsy experience a "postictal" period of recovery that can last from a few minutes to a few hours where the brain attempts to recover from the trauma of the seizure. During the postictal portion of the seizure the epileptic is unconscious of their actions, easily panicked, combative, upset, and unable to communicate. All California police officers receive training in the police academy regarding this illness.

16. Because of Andy's condition, he cannot drive. On February 12, 2018, Andy was walking to the transit center to catch a bus to the V.A. hospital for a neurology appointment. On the way he saw a homeless woman struggling to carry her belongings across Brookwood Avenue in Santa Rosa. Andy stopped and helped the woman with her belongings, and as he turned to leave he was stricken with a seizure and fell to the ground. Frightened, the homeless woman flagged down a passing patrol car to help.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

17. Officer John Whitten saw the woman waving to him and stopped his car to investigate. Officer Whitten saw Andy lying in a grassy area on the side of the road. Andy was unresponsive. The officer walked over to him and said, "You just drunk, man? Are you just really fucked up?"

18. At about that time, Andy began to get up. He was unsteady on his feet and unable to speak. The Officer called on his radio for medical assistance for "extreme intoxication." Whitten then attempted to grab ahold of Andy, but Andy responded by pushing away the officer's hands. The officer then grabbed Andy by his shoulders and kicked his legs out from under him, taking him to the ground. Officer Whitten pinned Andy's body to the ground, as the young man started shouting incoherently and struggling against the officer. As Andy rolled over on his stomach, Officer Whitten placed his arm around Andy's neck in a carotid restraint and held him to the ground.

19. About that time, Detective John Silva, an on-duty Petaluma police officer was driving by the scene and observed Officer Whitten on top of Andy. Believing that the officer was engaged in a struggle, Silva parked his vehicle and ran towards Andy and Officer Whitten. Detective Silva grabbed Andy's right arm and forced it above his head, ultimately placing Andy in a figure-four wristlock. Andy continued to struggle and cry out in pain, so Detective Silva pushed down on his face with his right forearm, pressing Andy's face into the ground and applying pressure to his trans-mandibular joint in an effort to effect pain compliance.

20. Officer Thomas Walsh responded to the scene and observed the officers atop Andy. Officer Walsh grabbed Andy by the arm and pinned his wrist to the ground. Several other officers began arriving.

21. The homeless woman whom Andy had been helping before his seizure began running towards the officers, yelling at them to stop. Sergeant Justin Farrington observed the woman running toward to the scene, and became convinced that she was attempting to attack the officers, so he ran upon the woman and tackled her to the ground. Despite explaining to the

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

sergeant what was happening, the woman was handcuffed, arrested for resisting a peace officer, and taken to jail.

22. Sergeant Farrington and Sergeant David Linscomb then joined in the efforts to subdue Andy, who was writhing under the officers' weight and screaming incoherently. Linscomb perceived Andy to be attempting to bite Detective Whitten, and in response stood on the side of Andy's head, applying downward pressure with his booted foot.

23. The officers rolled Andy into a prone position, and then Sergeant Farrington held Andy down by kneeling on Andy's back, pinning him under the officer's weight. Officer David Lamb piled on top of Andy as well, maintaining his bodyweight atop him. Detective Whitten kneeled on Andy's shoulder blade, and forced Andy's left arm behind his back. Officer Walsh and Sergeant David Marconi manipulated Andy's right arm into an arm-bar pain compliance hold as Officer Steven Pehlke applied handcuffs. Walsh pressed his left hand against the back of Andy's head, holding his head to the ground. Sergeant Linscomb placed Andy in a figure-four leg hold, applying pressure to Andy's injured leg. Even though Andy had been handcuffed, Lieutenant Ronald Nelson applied a wristlock in order to induce pain. Andy, beginning to form sentences again, cried out that Nelson was going to break his wrist. Nelson responded that that was a possibility if Andy didn't stop resisting.

24. Officer Matthew Rooney arrived on scene with "max leg restraints" and assisted Officer Walsh and Sergeant Marconi in the device's application, hogtieing Andy's ankles to his waist.

25. At about this time, paramedics arrived and advised the officers that they knew Andy, that he was a war veteran who had been injured in an explosion, and that he has seizures as a result of that injury. They administered a sedative to Andy and his symptoms began to abate. The officers transferred Andy onto a backboard, where he was released from the max restraints and shackled to the board. During this endeavor, Officer Robert Moore perceived that Andy was attempting to free his injured leg, so the officer applied pressure to his leg to effect compliance.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

26. Andy was taken in police custody to the hospital, where he stayed for approximately two hours while his condition was monitored, and where the officers were again informed of his condition. Andy woke up and found himself handcuffed to a hospital bed with a black bag over his head. Unable to see and in pain, Andy cried out for help. The officers returned and placed Andy under arrest and transported him to the Sonoma County Main Adult Detention Facility where he was booked on felony charges of resisting arrest, and assault on a peace officer.

27. All peace officers in the State of California receive training at the police academy that when an officer encounters someone experiencing a seizure, the officer should request medical assistance and take appropriate first aid measures. They are specifically taught *not* to restrain an individual. They are also specifically taught that after a seizure has ended, individuals may experience a period of post-seizure confusion, and that convulsions, confusion, and episodes of agitated behavior during an episode should not be perceived as deliberate hostility or resistance to the officer.

28. All peace officers in the State of California receive training at the police academy that epilepsy is a disability, and that individuals suffering from epileptic seizures have the right to be free from harm, including unnecessary physical restraint.

29. All peace officers in the State of California receive training at the police academy that individuals who unconsciously commit an act or omission because of a seizure are deemed to lack the intent necessary for the act to be considered a crime.

30. Fourteen police officers submitted reports to the Sonoma County District Attorney in support of their request that Andy be prosecuted. Not a single report made mention of Andy's medical condition, or the fact that he was in the throes of a seizure when these events occurred. These omissions were as intentional as they were material. The officers, realizing that they had used unwarranted force upon an innocent person having a seizure, conspired to have a disabled Purple Heart veteran arrested and prosecuted for a crime they knew that he did not commit in order to cover for their use of force and to protect themselves from civil liability.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

31. Without this critical information, the prosecutor's office filed a felony complaint against Andy on March 19, 2018. On April 23, 2018, after the prosecutor had reviewed the body-worn camera footage from the arresting officers, the case against Andy was dismissed.

32. The sadness and hopelessness that resulted from this wrongful arrest and prosecution led Andy to a deep depression where he had nearly given up on life. Feeling betrayed and forgotten by his country, Andy remains unable to leave his home without fear of what might happen if he has a seizure in public. He has instructed his family and friends never to call 911. As a result of these defendants' actions, Andy cannot walk freely in his own hometown without fear that he will be beaten, jailed or worse because of an injury sustained in selfless service to his country.

## STATEMENT OF DAMAGES

33. As a result of defendants' conduct, plaintiff sustained economic damages and consequential damages.

34. As a result of defendants' conduct, plaintiff sustained and will continue to sustain damages to his reputation, future and prospective earning capacity and wages, and prospective economic opportunities and advantages in an amount determined according to proof.

35. As a further result of defendants' conduct, plaintiff suffered and will continue to suffer general damages including fear, anxiety, humiliation, and emotional distress in an amount to be determined according to proof.

36. The actions of Defendants John Whitten, John Silva, Justin Farrington, Thomas Walsh, David Lamb, Brenda Harrington, Steven Pehlke, Matthew Rooney, David Linscomb, Summer Black, Robert Moore, David Marconi, Ronald Nelson, and Does 1-25 were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of the plaintiff, who seeks punitive and exemplary damages according to proof.

37. Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorneys' fees.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

[42 U.S.C. § 1213(1)(B); 29 U.S.C. § 794() – Title II of the Americans with Disabilities Act (ADA) and Rehabilitation Act ("RA") -- Wrongful Arrest]

38. All allegations set forth in this Complaint are hereby incorporated by reference.

39. Title II of the Americans with Disabilities Act and the Rehabilitation Act were intended to protect individuals like the plaintiff who have a disability from discrimination on the basis of their disability by the government.

40. Defendants John Whitten, John Silva, Justin Farrington, Thomas Walsh, David Lamb, Steven Pehlke, Matthew Rooney, David Linscomb, Robert Moore, David Marconi, and Ronald Nelson intentionally deprived the plaintiff of his freedom of movement by the use of physical force; defendants wrongfully arrested the plaintiff without a warrant or probable cause. No reasonable officer would reasonably believe that plaintiff had committed a crime.

41. Public entities such as the City of Santa Rosa and the City of Petaluma are vicariously liable for the acts of their employees under both the Americans with Disabilities Act and the Rehabilitation Act.

42. Plaintiff was a war veteran who had been permanently disabled in combat, and who suffered from seizures as a result of his injuries. Defendants knew plaintiff had these disabilities.

43. An arrest is wrongful under the ADA and RA if the police arrest someone because they misperceive the effects of a disability as being criminal activity.

44. Defendants arrested plaintiff for resisting arrest while he was having a seizure and lacked the mental capacity to commit a crime. Having a seizure is not an illegal act.

45. Defendants wrongfully arrested plaintiff because of his legal conduct directly related to his disability.

46. The acts and omission of defendants caused the plaintiff's harm, injuries and damages as alleged herein.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

## SECOND CAUSE OF ACTION
[42 U.S.C. §1983—FALSE ARREST/FALSE IMPRISONMENT]

47. All allegations set forth in this Complaint are hereby incorporated by reference.

48. Defendants John Whitten, John Silva, Justin Farrington, Thomas Walsh, David Lamb, Steven Pehlke, Matthew Rooney, David Linscomb, Robert Moore, David Marconi, and Ronald Nelson intentionally deprived the plaintiff of his freedom of movement by the use of physical force; defendants wrongfully arrested the plaintiff without a warrant or probable cause. No reasonable officer would reasonably believe that plaintiff had committed a crime.

49. Defendants acted in concert and as integral participants in unlawfully keeping plaintiff in custody and causing him to be falsely imprisoned. As a foreseeable result of being falsely arrested and falsely imprisoned the plaintiff suffered further injuries and damages.

50. The acts and omission of defendants caused the plaintiff's harm, injuries and damages as alleged herein.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION
[42 U.S.C. §1983—MALICIOUS PROSECUTION]

51. All allegations set forth in this Complaint are hereby incorporated by reference.

52. Defendants John Whitten, John Silva, Justin Farrington, Thomas Walsh, David Lamb, Brenda Harrington, Steven Pehlke, Matthew Rooney, David Linscomb, Summer Black, Robert Moore, David Marconi, and Ronald Nelson caused plaintiff to be arrested and intentionally provided the prosecutor with false, misleading and incomplete information as to the events in question. In addition, the defendants concealed exculpatory evidence and otherwise engaged in wrongful conduct that caused the malicious prosecution.

53. Plaintiff alleges on information and belief that defendants were acting under color of state law and in the course and scope of their employment.

54. The defendants' acts and omissions caused the Sonoma County District Attorney's Office to pursue a criminal prosecution against the plaintiff. The defendants knew that there was no reasonable basis for bringing said charges.

55. Plaintiff was charged and prosecuted based solely on the information supplied by the defendants. Charges were dismissed once the prosecutor reviewed video evidence which provided the missing information defendants withheld about plaintiff's disability.

56. The defendants subjected the plaintiff to criminal prosecution with malice and a reckless and conscious disregard for his rights.

WHEREFORE, plaintiff prays for relief as hereinafter set forth.

## **PRAYER FOR RELIEF**

Plaintiff prays for relief as follows:

1. For compensatory and economic damages according to proof;

2. For general damages according to proof;

3. For an award of exemplary or punitive damages against the individual defendants;

4. For an award of attorney's fees and costs as permitted by law;

5. For injunctive relief designed to remedy the unlawful practices alleged herein, including but not limited to: the adoption and implementation of department policies designed to enforce the provisions of the ADA in relation to police officers' contacts with persons with disabilities; the retraining of all officers regarding the lawful treatment of persons with disabilities;

6. For an order prohibiting the City of Santa Rosa and their agents and employees from arresting plaintiff while he is having a seizure; and

7. For such other and further relief as the Court may deem necessary and appropriate.

## **JURY TRIAL DEMAND**

Plaintiff hereby requests a jury trial on all issues so triable.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

**SCOTT LAW FIRM**

Dated: May 20, 2019

/s/ John Houston Scott
John Houston Scott
Attorney for Plaintiff

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109