John Houston Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel: (415) 561-9601
Fax: (415) 561-9609
john@scottlawfirm.net
liza@scottlawfirm.net

Izaak D. Schwaiger, SBN 267888
**SCHWAIGER LAW FIRM**
130 Petaluma Avenue, Suite 1A
Sebastopol, CA 95472
Tel: (707) 595-4414
Fax: (707) 581-1983
izaak@izaakschwaiger.com

Attorneys for Plaintiff, ANDY FORD

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ANDY FORD

Plaintiff,

v.

CITY OF SANTA ROSA, CITY OF PETALUMA, JOHN WHITTEN, JOHN SILVA, JUSTIN FARRINGTON, THOMAS WALSH, DAVID LAMB, BRENDA HARRINGTON, STEVEN PEHLKE, MATTHEW ROONEY, DAVID LINSCOMB, SUMMER BLACK, ROBERT MOORE, DAVID MARCONI, RONALD NELSON and DOES 1-25, inclusive.

Defendants.

Case No: 3:19-cv-02741 WHA

**PLAINTIFF'S OPPOSITION TO DEFENDANTS CITY OF PETALUMA'S AND JOHN SILVA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Date: August 8, 2019
Time: 8:00 a.m.
Courtroom: 12, 19th Floor
Judge: The Honorable William Alsup

# TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

FACTS................ ........................................................................ 2

ARGUMENT ........................................................................ 3

I. Applicable Law Regarding a Motion to Dismiss ........................................ 3

II. Andy Ford adequately alleged facts to establish a wrongful-arrest claim under the ADA against the City of Petaluma.........................................4

III. Mr. Ford adequately alleged facts to establish his false-arrest/imprisonment claim against Det. Silva........................................ 7

IV. Mr. Ford adequately alleged facts to establish his malicious-prosecution claim.... 8

V. Detective Silva is not entitled to qualified immunity on any claim ........................ 9

CONCLUSION........................................................................10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Awabdy v. City of Adelanto,* 368 F.3d 1062 (9th Cir. 2004) ........ 8

*Barber v. Guay,* 910 F.Supp. 790 (D.Me.1995) ........ 5

*Barden v. City of Sacramento,* 292 F.3d 1073 (9th Cir.2002) ........ 4

*Beck v. State of Ohio,* 379 U.S. 89 (1964) ........ 7

*Blankenhorn v. City of Orange,* 485 F.3d 463 (9th Cir. 2007) ........ 8, 10

*Duvall v. Cty. of Kitsap,* 260 F.3d 1124 (9th Cir. 2001) ........ 6

*Erickson v. Pardus,* 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ........ 3

*Freeman v. City of Santa Ana,* 68 F.3d 1180 (9th Cir.1995) ........ 8

*Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir.2002) ........ 8

*Gohier v. Enright,* 186 F.3d 1216 (10th Cir. 1999) ........ 5, 6

*Gorman v. Bartch,* 925 F.Supp. 653 (W.D.Mo.1996) ........ 5

*Heinke v. County of Tehama Sheriff's Dept.,* 2013 WL 3992407 (E.D. Cal. Aug. 1, 2013) ........ *6*

*Hishon v. King and Spalding,* 467 U.S. 69, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984) ........ 4

*Holcomb v. Ramar,* No. 1:13-CV-1102 AWISKO, 2013 WL 5947621 *(E.D. Cal. Nov. 4, 2012)..5*

*Kaur v. City of Lodi,* 263 F. Supp. 3d (E.D. Cal. 2017) ........ 6

*Lacey v. Maricopa Cty.,* 693 F.3d 896 (9th Cir. 2012) ........ 10

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir.2001) ........ 4

*Lewis v. Truitt,* 960 F. Supp. 175 (S.D. Ind. 1997) ........ 5

*Lopez v. Smith,* 203 F.3d 1122 (9th Cir. 2000) ........ 4

*Poppell v. San Diego,* 149 F.3d 951 (9th Cir. 1998) ........ 8

*Scheuer v. Rhodes,* 416 U.S. 232 (1974) ........ 4

*Sheehan v. City and Cty. of San Francisco,* 743 F.3d 1211 (9th Cir. 2014) ........ 4

*Starr v. Baca,* 652 F.3d 1202 (9th Cir. 2011) ........ 3

*United States v. Buckner,* 179 F.3d 834 (9th Cir.1999) ........ 7

*Walleri v. Federal Home Loan Bank of Seattle,* 83 F.3d 1575 (9th Cir. 1996) ........ 4

**STATE CASES**

*People v. Jeffers,* 41 Cal. App. 4th 917, 49 Cal. Rptr. 2d 86 (1996) ............................................. 7

*Sheldon Appel Company v. Albert and Oliker,* 47 Cal. 3d 863 (1989) .......................................... 9

*Zamos v. Stroud,* 32 Cal. 4th 958 (1994) ........................................................................ 8

**FEDERAL STATUTES**

29 U.S.C. § 12132 ........................................................................................................ 4

42 U.S.C. § 12132 ........................................................................................................ 4

**STATE STATUTES**

Cal. Penal Code § 26 ...................................................................................................... 7

Cal. Penal Code § 69(a) ............................................................................................. 1, 3

Cal. Penal Code § 148 ............................................................................................... 1, 5

**OTHER AUTHORITIES**

Judicial Council of California Criminal Jury Instruction 3425....................................................... 7

Judicial Council of California Criminal Jury Instruction 250........................................................ 7

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

## INTRODUCTION

This case is a classic cover-up by officers who concealed their knowledge of a war veteran's seizures to justify their unreasonable use of force against him to insulate themselves from liability for their misconduct. Plaintiff Andy Ford committed no crime. He was a Purple Heart veteran who suffers from epilepsy due to a brain injury sustained during a firefight with al-Qaeda forces in Afghanistan while in service to his country. Yet in February 2018, multiple officers unlawfully restrained, arrested and caused Mr. Ford to be criminally prosecuted for having a seizure. The gravamen of this lawsuit is what the officers did *after* they learned about Mr. Ford's seizure disorder.[1] The City of Petaluma and Detective John Silva seek to dismiss plaintiff's complaint.

In his first cause of action, Mr. Ford alleged he was wrongfully arrested under the Americans with Disabilities Act ("ADA"), Indeed, defendants arrested him because of a seizure. The City contends Det. Silva's did not know about Mr. Ford's disability, and thus it cannot be held liable. While this fact may be in dispute, it was adequately pled: Paramedics notified the officers on the scene that Mr. Ford was a war veteran who suffered from seizures due to an injury sustained overseas. (Complaint at para.s 25-27.) Qualified immunity fails on this claim.

Mr. Ford's second cause of action is for false arrest/imprisonment. Det. Silva contends he is not liable because he had probable cause to arrest the plaintiff for violating Penal Code 148. But prior to Mr. Ford's arrest, Det. Silva learned that the plaintiff's "crimes" were committed while he was suffering from a seizure. Once paramedics advised that plaintiff's behavior was a manifestation of his disability, all defendants lacked probable cause to further restrain or arrest Mr. Ford. The plaintiff lacked any criminal intent. By arguing Det. Silva had probable cause to arrest Mr. Ford, Det. Silva admits that he participated in the decisions to continue to restrain and ultimately to arrest the plaintiff. Absent probable cause, qualified immunity fails.

In his third cause of action, Mr. Ford alleges malicious prosecution against Det. Silva for submitting a police report which omitted any reference to Mr. Ford's epilepsy or seizure despite his knowledge of this disability. (Complaint at para. 30.) Weeks later Mr. Ford was charged with two counts of violating Penal Code 69(a). Det. Silva was a victim.

---

[1] Plaintiff has not alleged a cause of action based on excessive force.

Officers who violate the Fourth Amendment for want of probable cause, or by submitting false and misleading police reports for criminal prosecution, are not entitled to qualified immunity. This motion should fail. The complaint adequately alleges sufficient facts.

**FACTS**

While serving his county in Afghanistan, plaintiff Andy Ford sustained a serious brain injury which evolved into refractory epilepsy causing seizures so serious as to preclude him from driving. (Complaint at para.s 9-15.) On February 12, 2018, Mr. Ford was walking to the bus station to catch a ride to a neurology appointment when he encountered a homeless woman struggling to carry her belongings across the street in Santa Rosa. He stopped to help the woman and was stricken with a seizure and fell to the ground. Frightened, the woman flagged down a passing patrol car for help. (*Id.* at 16).

Santa Rosa Police Officer John Whitten observed the plaintiff lying in a grassy area next to the street. Mr. Ford began to stand up, but was unsteady and unable to speak. In response, Officer Whitten attempted to grab the plaintiff. (*Id.* at 17-18.) After Mr. Ford pushed the officer's hands away, Officer Whitten immediately used force by sweeping Mr. Ford's legs out from under him, pinning him to the ground, and ultimately placing plaintiff in a carotid restraint. (*Id.* at 18.)

City of Petaluma Detective John Silva was driving by and observed Office Whitten on top of Mr. Ford. Silva stopped his car, ran toward the two men, grabbed Ford's arm, place him in a figure-four wristlock, and pushed plaintiff's face into the ground to effect pain compliance. (*Id.* at 19.) Thereafter other officers joined in and continued to use categorically unnecessary and excessive force against Mr. Ford despite the homeless woman's attempts to stop them. (*Id.* at 20-23.) As plaintiff began regaining some ability to verbalize, he began to cry out that the officers were going to break his wrist. (*Id.* at 23.) At about the same time "max leg restraints" were applied by several more officers, hogtying plaintiff's ankles to his waist, paramedics arrived on the scene. (*Id.* at 23-25.) The paramedics advised the officers that: (1) they knew Mr. Ford; (2) he was a war veteran who had been injured in an explosion; and, (3) he had seizures as a result of that injury. (*Id.* at 25.) They administered a sedative; Mr. Ford's symptoms began to abate. (*Id.*)



SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

Police officers in California are trained to seek medical assistance when they encounter someone experiencing a seizure. They are trained that post-seizure confusion or hostility should not be perceived as deliberate resistance to an officer. They are trained not to unnecessarily restrain an individual suffering from a seizure. And they are specifically trained that individuals who unconsciously commit and act or omission because of a seizure are deemed to lack the intent necessary for the act to be considered a crime. (*Id.* at 27-29).

Nonetheless, *after* the officers had been notified of Mr. Ford's medical condition and all doubt had been removed as to what had occurred, these defendants: (1) shackled Mr. Ford to a backboard; (2) continued to apply pain compliance techniques; (3) handcuffed Mr. Ford to a hospital bed with a black bag over his head; and (4) placed Mr. Ford under arrest and booked him in the Sonoma County Main Adult Detention Facility for felony charges of resisting arrest and assault on a police officer. (*Id.* at 25-26.) Thereafter, all defendant officers including Det. Silva submitted police reports in support of the arrest which *omitted* any mention of Mr. Ford's disability, so as to cause him to be criminally prosecuted. (*Id.* at 30.)

On March 19, 2018, Mr. Ford was charged for violating Penal Code 69(a) in count two as against Det. Silva as the victim. (*Id.* at 31; Plaintiff's Request for Judicial Notice, Ex. 1.)

On April 23, 2018, the criminal complaint was dismissed. (*See,* Complaint at para. 31.)

## ARGUMENT

### I. Applicable Law Regarding a Motion to Dismiss

A dismissal motion should be denied if the subject complaint contains factual allegations adequate to give defendants fair notice of the pending claims, and, enables them to defend themselves if the complaint's allegations, taken as true, plausibly suggest entitlement to relief. *Starr v. Baca*, 652 F.3d 1202, 1216-1217 (9th Cir. 2011), rehearing en banc denied, 659 F.3d 850 (9th Cir. 2011). When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). The court must draw inferences in favor of the plaintiff. The

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Walleri v. Federal Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996).

Dismissal for failure to state a claim is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). The issue is whether the plaintiff is entitled to offer evidence to support the claims, not whether based on a complaint's allegations he will prevail as a matter of law. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974) (no quotations added). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**II. Andy Ford adequately alleged facts to establish a wrongful-arrest claim under the ADA against the City of Petaluma.**

The City claims that Det. Silva did not know about Mr. Ford's disability and therefore did not violate the ADA. Det. Silva's knowledge appears to be a fact in dispute, not one inadequately pled. *See,* Complaint at para.s 25-27. Here Mr. Ford adequately alleged all elements of this claim.

As applied here, Title II of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132; see also, 29 U.S.C. § 12132. These terms encompass "anything a public entity does" including arrests. *Barden v. City of Sacramento,* 292 F.3d 1073, 1076 (9th Cir.2002) (quoting *Lee v. City of Los Angeles,* 250 F.3d 668, 691 (9th Cir.2001)). A wrongful-arrest claim under the ADA is adequately pled if a plaintiff was arrested because the police misperceived the effects of that disability as criminal activity. *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), rev'd in part, cert. dismissed in part sub nom. *City & Cty. of San Francisco, Calif. v. Sheehan,* 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015) (quotations omitted).

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

The elements of a wrongful-arrest claim under the ADA are: (1) the plaintiff was disabled; (2) the officers knew or should have known that he was disabled; and (3) he was arrested because of legal conduct related to his disability.[2] *Gohier v. Enright,* 186 F.3d 1216, 1220 (10th Cir. 1999); *Holcomb v. Ramar*, No. 1:13-CV-1102 AWI SKO, 2013 WL 5947621, at *6 (E.D. Cal. Nov. 4, 2013) (holding plaintiff sufficiently alleged an ADA wrongful-arrest claim against officers who arrested him for violating Penal Code 148 even though he told them he could not comply with their orders because of his disability while his wheelchair was "clearly visible").

These elements have been evaluated by courts outside of the Ninth Circuit as follows.

> Courts have held that a plaintiff may recover under the ADA where he can show that (1) he was disabled, (2) the defendants knew or should have known he was disabled, and (3) the defendants arrested him because of legal conduct related to his disability. See e.g., , 910 F.Supp. 790, 802 (D.Me.1995) (holding that the defendant was not entitled to summary judgment on the Plaintiffs' "claims [under the ADA] that he was denied proper police protection and fair treatment due to his psychological and alcohol problems"); *Jackson v. Inhabitants of the Town of Sanford*, No. 94–12–P–H, 1994 WL 589617, at *6 (D.Me. Sept.23, 1994) (holding that the Defendant was not entitled to summary judgment on the Plaintiffs' claim that Defendants mistakenly arrested him for drunk driving when Plaintiff told the officers that he had been disabled by a stroke); accord., *Gorman v. Bartch*, 925 F.Supp. 653, 656 (W.D.Mo.1996) (holding that the plaintiff could not recover under the ADA for being transported to jail in a police vehicle not equipped for disabled persons, but distinguishing cases in which "disability-related conduct (e.g., an epileptic seizure) is confused with criminal activity, leading to the arrest of the disabled individual").

*Lewis v. Truitt*, 960 F. Supp. 175, 178 (S.D. Ind. 1997) (holding that material facts whether officers arrested plaintiff for resisting arrest because he was deaf precluded judgment).

Defendants' reliance on the holding of *Gohier v. Enright,* 186 F.3d 1216 (10th Cir. 1999) is misguided. In *Gohier,* the suspect was perceived as using a pipe to smash car windows, and when approached by a sole officer, appeared to threaten him with a knife. The Tenth Circuit identified facts which establish an ADA wrongful-arrest claim—those where a suspect had

[2] The Ninth Circuit model jury instructions have yet to publish wrongful-arrest elements but rather only states those related to employment matters. *See,* [*http://www3.ce9.uscourts.gov/jury-instructions/node/208*](http://www3.ce9.uscourts.gov/jury-instructions/node/208) available as of July 8, 2019.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

committed no underlying crime but was arrested for resisting arrest because of a misperception about the effects of his disability.

> In two opinions on which Gohier relies, district courts declined to dismiss ADA claims alleging that police had arrested, and, in one case, beaten, persons with disabilities who had not committed any crime…. The police in each case misperceived the effects of a disability as illegal conduct. In *Lewis*, they beat and arrested, for the offense of resisting law enforcement, a deaf man who could not understand their commands; in *Jackson*, they arrested for drunk driving a man who was sober, and whose unsteadiness and slurred speech resulted from a past stroke. The court in each case relied on a passage in the ADA's legislative history to conclude that a person with a disability can state a claim for such mistreatment:
>
>> In order to comply with the non-discrimination mandate, it is often necessary to [train] public employees about disability. For example, persons who have epilepsy, and a variety of other disabilities, are frequently inappropriately arrested and jailed because police officers have not received proper training in [how to recognize and aid people having] seizures.... Such discriminatory treatment based on disability can be avoided by proper training.
>
> H.R.Rep. No. 101–485, pt. III (1990), reprinted in 1990 U.S.C.C.A.N. 445 (quoted *1222 at 960 F.Supp. at 178, 1994 WL 589617, at *6 n. 12).
>
> ….
>
> Enright used force on Lucero not to effect an arrest, but to defend himself from a perceived threat. When he shot Lucero, he reasonably thought it necessary to do so to avoid serious harm or death.

*Gohier v. Enright*, 186 F.3d 1216, 1221-22 (10th Cir. 1999). Here the holding of *Gohier* favors plaintiff, not defendants. Mr. Ford committed no crime for which he was arrested. And, here the complaint adequately alleges that Det. Silva knew about Mr. Ford's disability when he was notified by the paramedics and the hospital, *before* plaintiff was wrongly arrested for his seizure.

Qualified immunity does not apply to this ADA claim because it cannot be brought against individuals. *Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 981 (E.D. Cal. 2017); *Heinke v. County of Tehama Sheriff's Dept.,* 2013 WL 3992407 (Aug. 1, 2013, E.D. Cal.). Rather, *respondeat superior* applies to ADA claims. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).

On all grounds, the motion as to this claim fails.

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

### III. Mr. Ford adequately alleged facts to establish his false-arrest/imprisonment claim against Det. Silva.

Det. Silva relies on a probable-cause defense to dismiss Mr. Ford's claims under the Fourth Amendment. "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." *Beck v. State of Ohio*, 379 U.S. 89, 96 (1964). The Ninth Circuit model jury instruction 9.23 states as follows: "' Probable cause' exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime."

The California Penal Code states that a person who commits an act without being conscious of it is *incapable* of committing any crime.

> All persons are capable of committing crimes except those belonging to the following classes:
> ….
> Two--Persons who are mentally incapacitated.
> ….
> Four--Persons who committed the act charged without being conscious thereof.
> Five--Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence.

Cal. Penal Code § 26; *People v. Jeffers*, 41 Cal. App. 4th 917, 922, 49 Cal. Rptr. 2d 86 (1996). Under the California Criminal Jury Instructions a defendant is not guilty of any crime if he is unconscious due to an epileptic seizure. *See,* Judicial Council Of California Criminal Jury Instruction 3425, and, 250 (Union of Act and Intent—a person must *willfully* commit an act to be found guilty of any general-intent crime).

Det. Silva's reliance on *United States v. Buckner*, 179 F.3d 834, 837, 839 (9th Cir.1999) is misguided. *Buckner* held that "attendant facts and circumstances support[ed] a fair probability" that the suspect was "linked" to drug trafficking" because that suspect was: (1) the sole passenger in a vehicle carrying thirty-seven pounds of hidden marijuana hidden in the dashboard and rear panels; (2) the car did not belong to those inside it; (3) the car was entering the United States from

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

a Mexican city known as a drug source; and (4) officers considered it typical for drug traffickers to travel in pairs to deflect suspicion. *Id.* Here defendants cite no crime that was "linked" to Mr. Ford's conduct, other than his suffering from a seizure.

Instead the complaint alleges Mr. Ford was deprived of freedom of movement and wrongfully arrested *after* the paramedics notified the officers at the scene including Det. Silva about plaintiff's seizure disorder. The moment the defendant officers learned of plaintiff's disability, they knew unequivocally that he lacked the mental state necessary to have committed any crime. Hence there was no probable cause. Thus this motion on this claim should also fail.

**IV. Mr. Ford adequately alleged facts to establish his malicious-prosecution claim.**

To establish a section 1983 malicious-prosecution claim, a plaintiff must allege the following: (1) tortious conduct under the elements of state law; and (2) intent to deprive the individual of a constitutional right. *Poppell v. San Diego*, 149 F.3d 951, 961 (9th Cir. 1998); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.1995). In California, the prosecution had to be: "(1) commenced by or at the direction of the defendant and pursued to a legal termination in plaintiff's favor; (2) brought without probable cause; and (3) was initiated with malice." *Zamos v. Stroud*, 32 Cal. 4th 958, 965, 12 Cal.Rptr.3d 54, 87 P.3d 802 (2004).

Malicious-prosecution actions may be brought against police officers who wrongfully cause charges to be filed by maliciously or recklessly submitting false, misleading, or incomplete reports to the prosecuting authorities. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir.2002) [holding that a coroner's failure to report and reckless disregard of abundant evidence pointing to suicide rather than murder adequately alleged a Fourth Amendment violation]; *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) [holding that an officer cannot conspire to or knowingly provide misinformation to a prosecutor, conceal exculpatory evidence, or engage in other wrongful or bad-faith conduct to cause Constitutionally questionable criminal charges]; *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007) [holding that arrest reports containing incomplete or false statements leading to criminal charges may be held liable for damages caused by those reports].

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

Under California law, a plaintiff has to establish the following elements.

1. Defendants were actively involved in causing Mr. Ford to be prosecuted;
2. That the criminal proceeding ended in Mr. Ford's favor;
3. That no reasonable person in defendants' circumstances would have believed that there were grounds for causing Mr. Ford to be prosecuted;
4. Defendants acted primarily for a purpose other than to bring Mr. Ford to justice;
5. Mr. Ford was harmed; and
6. Defendants' conduct was a substantial factor in causing Mr. Ford's harm.

CACI 1500 [modified]; *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 871 (1989). Defendants do not and cannot dispute elements 1, 2, 5 and 6. Defendants' reports were the only ones relied upon by the prosecutor and the issue of *Smiddy* is not before this Court.

Det. Silva's sole argument on this claim is that he had probable cause. But there was no probable cause to arrest or prosecute Mr. Ford for any violation of the Penal Code. All crimes in California require proof of a criminal-mental state—even general-intent crimes. Mr. Ford was unconscious because of his seizure disorder. The officer defendants knew that he lacked the ability to form the requisite mental state. Once the officers were notified that Mr. Ford committed no crime but suffered from a seizure, they had *no probable cause*. Yet they arrested, jailed, and had him prosecuted based on false reports. Collectively these allegations establish that Det. Silva acted for a purpose other than to bring Mr. Ford to justice—he sought to protect himself.

Defendants' reliance on Section 148 being a general- rather than specific-intent crime does not transform their misconduct into anything lawful. Mr. Ford had no capacity to form *any* intent. Det. Silva knew that, yet omitted material information relevant to the determination of probable cause—notice of Mr. Ford's disability— in a false and misleading report.

**V. Detective Silva is not entitled to qualified immunity on any claim.**

Det. Silva misreads plaintiff's complaint by limiting his participation in these events to "restraining Plaintiff until the other Defendant officers arrived." (Motion at page 11:16-17.) Mr. Ford also named Det. Silva as participating in: (1) the continued restraint of a man known to be suffering from a seizure; (2) Mr. Ford's arrest despite a lack of probable cause; and, (3) prosecuting Mr. Ford based on material omissions relating to probable cause—omitting plaintiff's seizure disorder from his service, and disability. (Complaint at para.s 30, 40, 48, and 52.)

SCOTT LAW FIRM
1388 SUTTER STREET, SUITE 715
SAN FRANCISCO, CA 94109

Participating in a false arrest without probable cause precludes qualified immunity. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 919 (9th Cir. 2012).Writing a false police report does not establish probable cause to defeat malicious prosecution. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007). Qualified immunity on this record therefore fails.

## CONCLUSION

For the foregoing reasons the defendants' motion to dismiss the plaintiff's complaint should be denied in its entirety, or, plaintiff should be granted leave to amend.

Respectfully Submitted,

Dated: July 10, 2019

By: /s/ Lizabeth N. de Vries
Lizabeth N. de Vries
Attorneys for Plaintiff