IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANDY FORD,

  Plaintiff,

 v.

CITY OF SANTA ROSA, CITY OF PETALUMA, JOHN WHITTEN, JOHN SILVA, JUSTIN FARRINGTON, THOMAS WALSH, DAVID LAMB, BRENDA HARRINGTON, STEVEN PEHLKE, MATTHEW ROONEY, DAVID LINSCOMB, SUMMER BLACK, ROBERT MOORE, DAVID MARCONI, RONALD NELSON, and DOES 1–25, inclusive,

  Defendants.

No. C 19-02741 WHA

**ORDER RE MOTION TO DISMISS**

## INTRODUCTION

In this civil rights action, two of fifteen defendants move to dismiss the action pursuant to FRCP 12(b)(6). For the reasons stated herein, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

The operative complaint alleges the following facts. Plaintiff Andy Ford is a veteran who received a Purple Heart during his tour of duty in Afghanistan. As a result of his injuries, plaintiff carries shrapnel in one leg and suffers from refractory epilepsy, an untreatable condition that causes uncontrollable seizures (Dkt. No. 1 ¶¶ 9–14). During recovery, which lasts minutes to hours following each seizure, plaintiff becomes "unconscious of [his] actions, easily panicked, combative, upset, and unable to communicate" (*id.* ¶ 15).

At the time of the alleged incident, defendants John Whitten, Justin Farrington, Thomas Walsh, David Lamb, Brenda Harrington, Steven Pehlke, Matthew Rooney, David Linscomb,

Summer Gloeckner (erroneously sued as Summer Black), Robert Moore, David Marconi, and Ronald Nelson worked as police officers for the City of Santa Rosa (*id.* ¶ 5; Dkt. No. 8 at 1). Defendant John Silva rated as a detective for the City of Petaluma (Dkt. No. 1 ¶ 6). Defendants Detective Silva and his employer, the City of Petaluma, move to dismiss pursuant to FRCP 12(b)(6) (Dkt. No. 9).

In February 2018, as plaintiff walked to a bus stop on his way to a neurology appointment, he encountered a homeless woman struggling to carry her belongings. Plaintiff stopped to assist her. After helping her, he began to have a seizure. The homeless woman flagged down a passing police car for help (Dkt. No. 1 ¶ 16). Officer Whitten, the driver of the passing patrol car, stopped and approached plaintiff, who laid unresponsive on the side of the road. Officer Whitten allegedly said, "You just drunk, man[]" (*id.* ¶ 17). Plaintiff started to rise unsteadily, unable to speak. Officer Whitten radioed for medical assistance, for "extreme intoxication." He then attempted to grab plaintiff, who pushed the officer's hands away. Officer Whitten took plaintiff down and pinned him to the ground as plaintiff shouted and struggled (*id.* ¶ 18).

At this time, Detective Silva drove by and saw Officer Whitten on top of plaintiff. He stopped and ran to assist Officer Whitten by placing plaintiff in a figure-four wristlock. Plaintiff continued to struggle and to shout in pain, so Detective Silva employed a pain-compliance technique. At this point, several Santa Rosa officers arrived and jumped into the fray, including Officers Farrington, Linscomb, Lamb, Walsh, Marconi, Pehlke, Nelson, and Rooney (*id.* ¶¶ 19–24). By the time the paramedics arrived, plaintiff had been hogtied with maximum leg restraints. The paramedics, who knew plaintiff, apprised the officers of plaintiff's neurological condition. The paramedics sedated plaintiff. Once the sedative took effect, the officers released plaintiff from the maximum restraints, shackled him to a backboard, and then transported him to a hospital in custody (*id.* ¶¶ 24–26). At the hospital, medical staff informed the officers present, once again, of plaintiff's epileptic disorder. When plaintiff regained consciousness, however, the officers placed him under arrest and transported him to the Sonoma

County Main Adult Detention Facility, booking him on "felony charges of resisting arrest, and assault on a peace officer" (*id.* ¶ 26).

Afterward, fourteen police officers filed reports to the Sonoma County District Attorney in support of plaintiff's prosecution. None of the reports disclosed plaintiff's neurological condition (*id.* ¶ 30). The district attorney initiated criminal proceedings against plaintiff but dismissed them after the prosecutor reviewed the body-camera footage from the arresting officers (*id.* ¶ 31). At the hearing, the police reports submitted to the district attorney were reviewed.

Plaintiff alleges three claims: (1) wrongful arrest under Title II of the ADA and the Rehabilitation Act; (2) false arrest/imprisonment under 42 U.S.C. § 1983; and (3) malicious prosecution under 42 U.S.C. § 1983. Defendants City of Santa Rosa and Officers Whitten, Farrington, Walsh, Lamb, Harrington, Pehlke, Rooney, Linscomb, Gloeckner, Moore, Marconi, and Nelson have answered the complaint (Dkt. No. 8). Now, defendants Detective Silva and the City of Petaluma, move to dismiss pursuant to FRCP 12(b)(6) (Dkt. No. 9). This order follows full briefing and oral argument.

**ANALYSIS**

**1. WRONGFUL ARREST CLAIM UNDER THE ADA AND THE REHABILITATION ACT.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act, in turn, provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. This act applies the same "standards applied under [T]itle I of the Americans with Disabilities Act of 1990" to determine whether a violation has occurred. 29 U.S.C. § 791(f). Our court of appeals has held that the ADA applies to arrests, though "exigent circumstances inform the reasonableness analysis under the ADA." *Sheehan v. City & Cty. of San Francisco*, 743 F.3d

3

1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds sub nom. City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765 (2015). To survive a motion to dismiss in the context of wrongful arrest, plaintiff must plausibly allege that: "(1) he was disabled; (2) the officers knew or should have known he was disabled; and (3) the officers arrested him because of legal conduct related to his disability." *Lawman v. City and Cty. of San Francisco*, 159 F. Supp. 3d 1130, 1147 (N.D. Cal. 2016) (Judge Donna Ryu).

Here, plaintiff alleges wrongful arrest under Title II of the ADA and under the Rehabilitation Act on the grounds that all the officers involved "intentionally deprived . . . plaintiff of his freedom of movement by the use of physical force," that defendants "arrested . . . plaintiff without a warrant or probable cause," and that "no reasonable officer would reasonably believe that plaintiff had committed a crime" (Dkt. No. 1 ¶ 40). Plaintiff further suggests that defendants knew that plaintiff "lacked the mental capacity to commit a crime" prior to arresting him (*id.* ¶¶ 27–29, 42).

This order finds that plaintiff does not plausibly allege that Detective Silva engaged in a wrongful arrest under the ADA and the Rehabilitation Act. While the complaint adequately alleges that plaintiff had a disability and that Detective Silva knew about plaintiff's disability, it insufficiently alleges that Detective Silva knew about the disability at the time he became involved or that he continued to be involved in the arrest after learning this information. As such, the complaint fails to plausibly allege that Detective Silva "arrested plaintiff without . . . probable cause" (*id.* at ¶ 40). Probable cause exists when, considering the totality of circumstances known to the arresting officers, a prudent person would believe the suspect had committed a crime. *Dubner v. City and Cty. of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001). Plaintiff alleges that Detective Silva became involved in the altercation after he drove by and saw Officer Whitten and plaintiff struggling. As pleaded, it appears that Detective Silva's involvement in the arrest came before he learned of plaintiff's condition and that he became involved only because he believed plaintiff had committed or was committing a crime (resisting arrest). Thus, the complaint insufficiently alleges that Detective Silva lacked probable cause when he decided to intervene.

4

The complaint also vagues out as to whether Detective Silva's involvement continued beyond his initial intervention. Detective Silva's name only appears in one paragraph of plaintiff's factual allegations (Dkt. No. 1 ¶ 19). The complaint does not clearly state whether or not Detective Silva continued to participate in the arrest *after* he learned of plaintiff's disability. Because the complaint fails to adequately plead Detective Silva's involvement in the arrest *after* he allegedly learned of plaintiff's disability, the motion to dismiss this claim is **GRANTED**.

### 2. SECTION 1983 CIVIL RIGHTS CLAIMS.

Section 1983 provides:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To survive a Rule 12(b)(6) motion on a Section 1983 claim, plaintiff must plausibly allege that defendants: (1) violated rights protected by the Constitution or by federal statue and (2) that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Each defendant in a Section 1983 claim must personally participate in the alleged violation of rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff advances two Section 1983 claims, both of which are discussed in turn.

#### A. False Arrest and False Imprisonment.

Plaintiff alleges that the officers, including Detective Silva, "intentionally deprived . . . plaintiff of his freedom of movement" and that they "arrested . . . plaintiff without a warrant or probable cause." Additionally, plaintiff alleges that defendants "acted in concert and as integral participants" when they unlawfully held plaintiff in custody (Dkt. No. 1, ¶¶ 48–49).

Our court of appeals has held that "[a] claim for unlawful arrest is cognizable under [Section] 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner*, 266 F.3d at 964. Probable cause exists when,

5

considering the totality of circumstances known to the arresting officers, a prudent person would believe the suspect had committed a crime. *Id*. at 966. As such, the crux of this claim is whether plaintiff plausibly alleges that Detective Silva acted without probable cause. This order finds that while plaintiff plausibly alleges that Detective Silva was acting under color of state law, plaintiff fails to plausibly allege that he acted without probable cause. The complaint, as pleaded, gives rise to the inference that Detective Silva became involved merely because he believed that plaintiff was resisting arrest, not because plaintiff suffered a seizure. Beyond that, the complaint does not adequately allege, as already stated, his personal participation in the arrest after allegedly learning of plaintiff's disability.

Although plaintiff states that defendants acted as integral participants in his allegedly unlawful arrest, he also seems to advance a theory of team liability by stating that defendants acted in concert. This theory fails. It has been widely recognized that plaintiff cannot "hold an officer liable because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d at 935. As described above, allegations of Detective Silva's personal participation in the arrest remain tenuous. The complaint fails to plausibly allege that Detective Silva continued to personally participate in plaintiff's arrest after learning of his disability. Accordingly, the motion to dismiss this claim is **GRANTED**. Insofar as plaintiff would like to amend his complaint, he should adequately allege the extent of Detective Silva's personal participation as it pertains to the arrest.

\*           \*           \*

There is no claim for excessive force. The claims are for wrongful arrest, false arrest/imprisonment, and malicious prosecution. While the struggle on the sidewalk is described, at no point does the complaint characterize the force used by the police officers as excessive. The gravamen of the complaint is that plaintiff should not have been arrested or deprived of his freedom of movement by the use of physical force in light of his disability. The complaint itself states that Detective Silva became aware of plaintiff's disability when the paramedics arrived and told the officers about the disability. Once Detective Silva was aware of this information, however, the complaint is completely silent as to what Detective Silva did by

6

way of further restraint or arrest of plaintiff. This seems curious because the complaint overflows with detail as to what Detective Silva did prior to learning of plaintiff's disability. For example, Paragraph 19 states, "Detective Silva grabbed [plaintiff's] right arm and forced it above his head, ultimately placing [plaintiff] in a figure-four wristlock," and "Detective Silva pushed down on his face with his right forearm, pressing [plaintiff's] face into the ground and applying pressure to his trans-mandibular joint in an effort to effect pain compliance."

Paragraph 40 lists eleven officers, including Detective Silva, who "intentionally deprived . . . plaintiff of his freedom of movement by the use of physical force." But, again, the scenario laid out as to Detective Silva, only sets forth force used by him before learning of plaintiff's disability. Paragraph 40 goes on to say that defendants "wrongfully arrested . . . plaintiff without . . . probable cause." Curiously, the complaint fails to specifically describe which of the officers actually arrested plaintiff. This is curious because the complaint calls out specific officers and very specific conduct by them when it's beneficial but at other times vagues out. Detective Silva is not named as someone who arrests anyone. The same is true of Paragraph 48 under plaintiff's false imprisonment claim for relief.

### B. Malicious Prosecution.

For a Section 1983 claim of malicious prosecution, this order looks to the elements set forth by state common law. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). In California, plaintiffs alleging malicious prosecution must show that the action: "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in . . . plaintiff's[] favor; (2) was brought without probable cause; and (3) was initiated with malice." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019).

Our court of appeals has long presumed that a "prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exist[ed] at the time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981). This presumption could be rebutted in a number of ways, including when a prosecutor receives false information and when the prosecution relies solely on the police investigation and arrest when initiating proceedings. *Id.* at 266–67. Our court of appeals has recently decided, however, that "a showing of a[n]

7

'[improper] motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision' will suffice to rebut the presumption," rather than requiring an inquiry into the prosecutor's actual state of mind. *Beck v. City of Upland*, 527 F.3d 858, 865 (9th Cir. 2008) (quoting *Hartman v. Moore*, 547 U.S. 250, 265 (2006)). This order finds that plaintiff plausibly alleged a claim of malicious prosecution against Detective Silva, as follows.

### *(1) Detective Silva's Contribution to Plaintiff's Prosecution.*

The complaint adequately alleges that Detective Silva provided the Sonoma County District Attorney with "false, misleading, and incomplete information" by intentionally omitting information about plaintiff's medical condition in his report to the prosecutor. Plaintiff also plausibly alleges that this report, in part, commenced plaintiff's prosecution and that the case was dismissed in plaintiff's favor. Defendants argue that Detective Silva lacked knowledge about the disability and thus any omission was unintentional. FRCP 12(b)(6) motions, however, do not involve factual disputes. This order must analyze the motion based on the allegations set forth in the complaint.

### *(2) Lack of Probable Cause.*

This order finds that plaintiff adequately alleges lack of probable cause as it pertains to his *malicious prosecution* claim. The facts alleged give rise to the inference that Detective Silva became aware that plaintiff suffered from epilepsy and omitted this information from his report. Detective Silva, as a result of his training, knew that individuals who "commit an act or omission because of a seizure . . . lack the intent necessary for the act to be considered a crime" (Dkt. No. 1 ¶ 29). These alleged facts give rise to the inference that Detective Silva had no reason to believe that plaintiff possessed the necessary intent to commit the crimes for which he was charged. It is thus unlikely that a prudent officer, knowing what Detective Silva knew at the time of the report, would have believed the suspect had committed a crime. Plaintiff sufficiently alleges that Detective Silva filed a false report encouraging prosecution without probable cause.

Defendants contend that plaintiff has not sufficiently rebutted the District Attorney of Sonoma County's presumption of independent judgment. In light of the new standard for

8

prosecutorial independence adopted in *Beck*, however, plaintiff's complaint plausibly alleges that Detective Silva, an official, submitted a false report urging for prosecution and that the decision to prosecute plaintiff lacked probable cause as described above.

### *(3) Acting with Malice.*

Malice means more than hostility or ill will. Under California law, if defendants had "no substantial ground for believing in the plaintiff's guilt, but . . . instigated proceedings against . . . plaintiff, it is logical to infer that . . . defendant's motive was improper." *Greene v. Bank of America*, 216 Cal. App. 4th 454, 464 (2013) (citation omitted). Plaintiff alleges that Detective Silva's report to the prosecutor did not include information about plaintiff's medical condition, despite the allegation that he possessed this knowledge. This information materially impacted whether plaintiff possessed the intent to commit a crime. Accordingly, plaintiff adequately alleges that Detective Silva had no substantial ground to believe in plaintiff's guilt but filed the report anyway, giving rise to the inference that Detective Silva had an improper motive for submitting the report.

Though the complaint vagues out as to Detective Silva's involvement in the arrest, Paragraph 52 under the malicious prosecution claim for relief does specifically say that Detective Silva "intentionally provided the prosecutor with false, misleading, and incomplete information." This is enough to state a claim for relief under *Blankenhorn v. City of Orange*, 485 F.3d 463,484 (9th Cir. 2007), which suggests an intentional omission of material information from a police report that would establish a lack of probable cause precludes a defendant from prevailing on summary judgment on a malicious prosecution claim.

With respect to qualified immunity, defendants' opening motion focused on the qualified immunity defense solely on Detective Silva's intervention in the sidewalk struggle:

> Here, Detective Silva acted reasonably in deciding to intervene in an ongoing struggle between Plaintiff and a uniformed officer (Officer Whitten). These facts are openly admitted by Plaintiff in his Complaint and confirm that Detective Silva is entitled to qualified immunity.

(Dkt. No. 9 at 14). Defendants' opening brief did not raise qualified immunity as to the allegedly false police report. The reply brief attempted to do so, but that is too little too late.

It is unfair to raise in the reply brief a point that should have been raised in the opening brief. Doing so deprives the opposing party of the opportunity to rebut. For this reason alone, the issue of qualified immunity with respect to the allegedly false police report will not be reached on this motion. Even if it were to be reached, qualified immunity is a matter of defense. It may only be reached on a motion to dismiss on FRCP 12(b)(6) if the complaint on its face establishes that the officer is entitled to qualified immunity. Here, the defense is not self-evident on the face of the complaint with respect to the issue of the allegedly false police report. For the foregoing reasons, the motion to dismiss this claim is **DENIED.**

3. **REQUESTS FOR JUDICIAL NOTICE.**

A court may take judicial notice of any fact "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b)(2). Plaintiff filed one request for judicial notice — a copy of the underlying criminal complaint in this matter (Dkt. No. 15, Exh. 1). This exhibit is not necessary for resolving the motion to dismiss, thus the request is **DENIED**.

**CONCLUSION**

In light of the foregoing, defendants motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. As to the dismissed claims, plaintiff may move for leave to file an amended complaint by **AUGUST 28 AT NOON**. Any such motion should include as an exhibit a redlined version of the proposed amended complaint that clearly identifies all changes from the initial complaint. Plaintiff should be sure to plead his best case. If no such motion is filed, the answer is due seven consecutive days thereafter.

**IT IS SO ORDERED.**

Dated: August 9, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10